```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

TONNIE NEALY,

      Plaintiff,

v.                                    Case No:  2:23-cv-123-JES-KCD

MELINDA MASTERS, JON CARNER,
and DOCTOR LEE,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendants Melinda Masters, Jon Carner, and Doctor Yen Le's Motion for Summary Judgment (Doc. #37) and Plaintiff Tonnie Nealy's Response (Doc. #41). For the reasons set forth below, the motion is granted.

### I.  Background

Nealy is an involuntarily committed resident of the Florida Civil Commitment Center (FCCC), and he sued three FCCC officials for refusing to provide adequate medical care. Nealy's primary complaint was that he had not yet undergone a knee surgery recommended by an outside specialist. He also complained that Defendants did not provide adequate treatment for pain in his shoulders, knees, neck, back, ear, and heart. Defendants are former employees of Wellpath Recovery Solutions, the private company that operates the FCCC under contract with the State of Florida. Masters and Carner are former facility administrators,

and Le (incorrectly named in the Complaint as "Doctor Lee") is the former medical director.

In the Statement of Material Facts section of their Motion, Defendants recount the medical treatment Nealy has received since 2022, and they support those facts with pinpoint cites to the attached medical records. The records describe about 65 appointments Nealy had with FCCC medical staff and outside specialists. Nealy responds to each statement of fact the same way: "Denied, (see) exhibits- a,b,c,d,e,f." (Doc. #41 at 2-5). Those exhibits do not contradict the medical records, and Nealy's lazy and superficial denials do not establish a genuine issue of material fact. See Scheduling Order (Doc. #33) ("Each denial must set forth a **pinpoint** citation to the record where the fact is disputed…**any fact that the opposing counsel or party does not specifically controvert…may also be deemed undisputed if supported by record evidence**."); see also Porter, infra. The medical records are thus uncontroverted.

Nealy does not claim that any particular medical appointment led to a violation of his rights. In his Response, he points to three issues in an effort to demonstrate a genuine dispute of material fact: (1) an unreasonable delay of a knee surgery recommended by an outside specialist; (2) inadequate treatment of chronic shoulder pain; and (3) delayed treatment of an ear condition. The Court has carefully reviewed all the medical

records submitted by the parties, but the following summary will focus on the three issues Nealy raises in his Response.

Doctor Le was the FCCC's medical director from April 7, 2022, to February 23, 2024. Nealy's history of chronic shoulder and knee pain predated Ye's arrival at the FCCC. Medical staff had been treating the pain with medication and physical therapy since at least early 2020. On February 22, 2022, Le's predecessor referred Nealy to an orthopedic specialist. (Doc. #37-9.) Orthopedic surgeon Dr. Connolly saw Nealy on April 27, 2022, and ordered x-rays of his left knee and right shoulder. (Doc. #37-10.) In the following days, nurse Antoria Blanding scheduled the x-rays and a follow-up appointment with Dr. Connolly. (Doc. #37-11.) Nurse practitioner Coleen Reilly approved bilateral soft knee sleeves on May 19, 2022. (Doc. #37-13.)

On May 26, 2022, Nealy saw Reilly for shoulder pain. Nealy held his right arm limp and claimed he could not move it at all. He was argumentative during the appointment when Reilly tried to assess his shoulder. When he left, Nealy used his right arm to pick up his walker, open a security door, and use his cane. (Doc. #37-13.)

On June 1, 2022, Nealy saw outside ear, nose, and throat (ENT) specialist Dr. Luis Marmol, who noted Nealy had been undergoing ear irrigations at the FCCC, diagnosed Nealy with multiple issues, prescribed Ciprodex, and recommended that Nealy lose weight and

return in two weeks. (Doc. #37-17.) During a visit on July 6, 2022, Reilly learned the follow-up appointment she scheduled did not occur, so she rescheduled it. Reilly also noted that Nealy had a total knee replacement scheduled. (Doc. #37-18.)

Dr. Le first saw Nealy on July 15, 2022, for pre-op clearance of the knee replacement surgery. The purpose of the visit was to ensure Nealy could get through the surgery safely. Nealy complained of chest pain and shortness of breath. Dr. Le ordered Nealy to be seen and cleared by a cardiologist before the knee replacement. (Doc. #37-21.) FCCC staff arranged for Nealy to see a cardiologist on July 26, 2022. Blanding cancelled the knee surgery and noted it would be rescheduled after Nealy was cleared by the cardiologist. (Doc. #37-22.) On July 22, 2022, Nealy complained of shoulder pain, and Reilly gave him a heat pack. (Doc. #37-23.)

Nealy saw the outside cardiologist, Dr. Gene Myers, on July 26, 2022. Myers ordered more cardiac testing before Nealy could be cleared for surgery. (Doc. #37-24.) Nealy had a phone consult with Dr. Myers on August 3, 2022. (Doc. #37-26.) On August 11, 2022, Nealy saw Nurse Reilly for "pain all over." (Doc. #37-27 at 2.) Reilly noted that he did not appear to be in pain and was chatty with medical staff, but she prescribed Cymbalta. Reilly saw Nealy again on August 25, 2022, when he complained of shoulder pain and numb hands. Reilly noted multiple x-rays have shown

degeneration and hypertrophy, and she ordered a CT scan of Nealy's shoulders, an x-ray of his spine, and a renewal of his Tylenol prescription. She also provided Nealy a wedge pillow for his shoulder pain. (Doc. #37-28.)

Nealy underwent an echocardiogram (EC) on November 15, 2022, and had a consult with Dr. Myers the next day. (Docs. #37-31 and #37-32.) Dr. Le saw Nealy on November 21, 2022, for numbness in his fingers following a fight, plus weakness and pain in his knees, shoulders, and back. Le ordered CT scans and pain medication. (Doc. #37-33.) On December 6, 2022, Le saw Nealy for knee pain following an altercation. Le noted the pain was likely caused by osteoarthritis, noted knee surgery was awaiting clearance from the cardiologist, and recommended Tylenol and weight loss. (Doc. #37-34.) CT scans of Nealy's spine taken on January 16, 2023, revealed no acute abnormalities. (Doc. #37-35.) During a visit on February 21, 2023, Nealy admitted to Le that he was not taking the medication prescribed to him. (Doc. #37-40.) Le saw Nealy on March 7, 2023, for a periodic exam. Le noted that Nealy was not adhering to medication, diet, or exercise recommendations, and Nealy refused to be examined. (Doc. #37-41.)

On March 10, 2023, Nealy had a follow-up visit with Dr. Marmol. (Doc. #37-42.) Based on Marmol's recommendations, FCCC staff ordered Nealy a 30-day supply of nasal spray. Le saw Nealy for multiple issues on April 25, 2023. Nealy refused to raise his

right shoulder during the examination, but Le saw Nealy used his right arm to open a heavy security door without difficulty. Le ordered x-rays of both knees and a CT scan of the right shoulder. (Doc. #37-45.) Nealy returned to Marmol on May 1, 2023. Marmol recommended a CT scan of Nealy's sinuses, and FCCC staff ordered it. (Doc. #37-46.) Le saw Nealy on May 15, 2023, for a finger injury. They also reviewed the knee x-rays, which showed arthrosis and bilateral spurs. Le approved Nealy's request for a walker. (Doc. #37-48.)

Nealy saw Dr. Myers, the cardiologist, on May 31, 2023. Catheterization testing was negative except for enlargement and abnormal curvature of the prostate. (Doc. #37-49.) Based on Myers' recommendation, Le ordered a referral to a urologist. 9Doc. #37-51.) Nealy had a telemedicine appointment with Myers on June 8, 2023. Due to Nealy's persistent elevated blood pressure and left ventricular hypertrophy, Myers recommended that Nealy continue his current medication regime and added a beta blocker and an ACE inhibitor. Myers also recommended a rolling walker to facilitate more exercise. (Doc. #37-50.) Nurse Blanding ordered Nealy a rolling walker. (Doc. #37-52.)

On August 1, 2023, x-rays of Nealy's knees found moderate degenerative change. (Doc. #37-55.) On August 17, 2023, Le saw Nealy for knee and shoulder pain, among other issues. Le noted that physical therapy and a CT scan for the shoulder had already

been ordered, reordered pain medication, and counseled Nealy on pain management. Le also advised Nealy to continue using the knee brace and walker and ordered a follow-up appointment with the orthopedic surgeon. (Doc. #37-58.) That follow-up occurred on August 31, 2023. Dr. Connolly diagnosed Nealy with unilateral primary osteoarthritis of the left knee and pain in both shoulders, and he recommended a total left knee arthroplasty. (Doc. #37-60.) FCCC staff ordered shoulder imaging and scheduled knee surgery for October 18, 2023, based on Dr. Connolly's schedule.

On October 2, 2023, Le ordered that Nealy needed to see Dr. Myers "asap" for cardiac clearance before the knee surgery. (Doc. 37-64 at 2.) Nealy was subsequently cleared for surgery. Le testifies that Nealy requested the surgery be delayed for no clear reason but refused to sign a refusal for surgery. Nealy denies this, and the surgery was carried out as planned on October 18, 2023. (Doc. #37-66.) There were no complications, and Nealy returned to the FCCC on October 19, 2023. FCCC staff monitored Nealy's recovery, and Le referred him to physical therapy. (Doc. #37-67.)

On October 23, 2023, Le directed FCCC staff to schedule Nealy an appointment with Dr. Connolly for shoulder pain. (Doc. #37-67.) Nealy saw Connolly on November 3, 2023, and Connolly ordered that Nealy continue physical therapy and return in four weeks. On Following a visit on November 20, 2023, Dr. Marmol recommended

that Nealy receive right ear debridement every three months. (Doc. #37-68.)  Nealy has continued receiving treatment from Dr. Marmol for ear pain and Dr. Myers to monitor his cardiac health.

## II. Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists."  Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant.  See Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006).  But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are

'implausible.'" Mize v. Jefferson Cty. Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. Howard v. BP Oil Co., Inc., 32 F.3d 520, 524 (1994).

Hall files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1059 (11th Cir. 2001).

**III. Analysis**

Because Nealy is a civil detainee, his claims arise under the Fourteenth Amendment rather than the Eighth Amendment. Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982). But "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments, and it makes no difference whether [the plaintiff] was a…detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases

involving…detainees." Keith v. DeKalb Cnty., Ga., 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (cleaned up).

"To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir.2010) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009)). In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Shaw v. Allen, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifferent, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024). An official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). But a difference in medical opinion does not constitute deliberate indifference.

Hernandez v. Sec'y Fla. Dep't of Corr., 611 F. App'x 582, 584 (11th Cir. 2015). Nor does the exercise of medical judgment by a care provider. Id. In any event, even if a defendant actually knew of a substantial risk to a detainee's health or safety, he cannot be found liable for deliberate indifference "if he 'responded reasonably to that risk.'" Wade, 106 F.4th at 1262 (quoting Farmer, 511 U.S. 825, 844-45 (1994)).

Nealy fails to show that any Defendant was deliberately indifferent to his serious medical need. The unrefuted evidence summarized above demonstrates that Le and other FCCC medical staff responded reasonably to each of Nealy's medical complaints by ordering laboratory testing, making diagnoses, and developing and following treatment plans. Le frequently referred Nealy to outside specialists and followed those specialists' recommendations. Nevertheless, Nealy attempts to demonstrate three material, disputed issues to survive summary judgment.

First, Nealy argues Defendants are responsible for an unreasonable delay of his knee surgery. He and another resident named Wendall Hall state in affidavits that between December 2022 and March 2023, Carner repeatedly said outside specialists were not seeing Nealy because the FCCC had outstanding bills for the treatment of other residents. (Docs. #41-1 and #41-2.) Carner and Masters tesitfy they never directed Wellpath to refuse to pay outside doctors for the medical care they provided residents.

(Docs. #37-2 and #37-3.)  Regardless of whether and when Wellpath paid the medical bills, the unrefuted evidence disproves the claim that outside specialists refused to treat Nealy.  From April 2022 to January 2024, Nealy had at least fourteen appointments with outside medical providers for treatment of his knee, shoulders, and ear.  That is not counting referrals for diagnostic imaging or medical issues unrelated to this suit.

Nealy also blames Le for the delay of his knee surgery because she did not order the cardiologist to immediately evaluate Nealy's chest pain and clear him for surgery.  That claim does not hold water because there was no significant delay between referral and treatment.  Le decided Nealy needed clearance from a cardiologist during the July 15, 2022 pre-op appointment, when Nealy complained of chest pain and shortness of breath.  Nealy had his first appointment with the cardiologist, Dr. Myers, just eleven days later.  Dr. Myers determined Nealy would need cardiac testing before undergoing knee surgery.  Myers continued to see Dr. Myers regularly, and Dr. Le followed his recommendations.  Dr. Le acted reasonably by relying on her medical judgment and the medical judgment of Dr. Myers.

Nealy's Response makes another dubious claim relating to his knee issue, presumably to satisfy the causation element.  Nealy claims that during surgery, the surgeon told him he could have saved the knee, but the year-long delay made total knee replacement

necessary. The uncontroverted medical records flatly refute this claim. Nealy was scheduled for a total knee replacement before it was delayed due to concerns over Nealy's cardiac health. (See Doc. #37-18 at 2.) There is no evidence that Nealy had to undergo a more significant surgery because it was delayed awaiting clearance from a cardiologist.

The second of Nealy's purportedly disputed issues is an alleged delay in treatment for his shoulders. Nealy claims he first complained of shoulder pain in 2020, but Le did not refer him to an outside specialist until over three years later. Repeated x-rays of Nealy's shoulders have shown degeneration, and FCCC medical personnel have treated the pain with medication, physical therapy, and recommendations for behavioral changes. Nealy argues the treatment he has received has been inadequate to treat his severe pain.

The evidence demonstrates that Le was not deliberately indifferent to Nealy's shoulder pain. To start, Le did not work at FCCC until April 7, 2022, and the first time Le saw Nealy for shoulder pain was November 21, 2022. She reviewed x-ray results with Nealy and ordered an ultrasound of his shoulders "asap." (Doc. #37-33 at 2-3.) Dr. Connolly noted on August 31, 2023, that Nealy reported his pain was unresponsive to the conservative treatment he had received, and Connolly ordered MRIs of the shoulders. Nealy cannot safely undergo MRIs because he has bullet

fragments in his leg, but a sonographic evaluation was conducted the next day. After a follow-up visit, Dr. Connolly recommended that Nealy continue physical therapy.

Nealy's claim that he did not receive adequate care for his shoulder pain represents nothing more than a difference of opinion on the appropriate course of treatment. Nealy believes he should have been referred to a specialist earlier. But such a difference of opinion does not constitute deliberate indifference. <u>See Hernandez</u>, <u>supra</u>. And anyhow, when Nealy was referred to a specialist, Dr. Connolly ultimately recommended that he continue the physical therapy FCCC staff was already providing. There is no evidence to support a finding that Le was deliberately indifferent to Nealy's shoulder pain.

Finally, Nealy accuses the defendants of failing to properly address his complaints of ear pain and loss of hearing. Indeed, the medical records reflect an unexplained gap in treatment. However, Nealy fails to present evidence linking that gap to the conduct of any Defendant. In his affidavit, Nealy claims an ENT specialist he saw in 2022 recommended follow-up visits every three months for treatments for his ear condition. But the medical records show that Nealy has conflated different visits with the ENT specialist, Dr. Marmol. Nealy first saw Marmol on June 1, 2022, and Marmol prescribed Ciprodex and recommended a follow-up two weeks later for a repeat examination. It was during a November

20, 2023 visit—about nine months after Nealy filed his Complaint—when Marmol ordered right ear debridement every three months.

The two-week follow-up visit Dr. Marmol recommended in 2022 did not happen. On July 6, 2022, nurse practitioner Reilly noted that the ENT follow-up she ordered did not occur, so she ordered it again. (Doc. #37-18.) On August 25, 2022, Reilly again noted that Nealy needed a follow-up with the ENT, which she had ordered "months ago." (Doc. #37-28.) The record does not reflect that Nealy returned to Dr. Marmol until March 10, 2023, on referral from Dr. Le. The delay raises questions, but that is not enough to avoid summary judgment.

To start, Nealy presents no evidence connecting the delay to the deliberate indifference of Le, Carner, or Masters. He has submitted three resident communication forms dated between October 2022 and January 2023 requesting care for his ear condition. (Doc. #41-5 at 4-8.) The authenticity of these documents is questionable. The spaces on the forms for FCCC staff to date their receipt and write responses are blank. What is more, the handwriting on the forms is markedly different than the handwriting in Nealy's exhibits that do contain indicia of authenticity, like receipt stamps and responses from FCCC staff. The handwriting looks strikingly similar to that of Wendall Hall, an FCCC resident who files frequently in this Court and submitted an affidavit in this case. Hall has been caught filing fraudulent exhibits in

- 15 -

other cases. See Order (Doc. #307) at 4, Hall v. Merola, No. 3:15-cv-1054-BJD-PDB (M.D. Fla. May 20, 2024). But even if the forms are authentic, they do not prove that a defendant received them and responded unreasonably.

Nealy also fails to demonstrate the delay caused him harm. "When a plaintiff alleges that delay in medical treatment shows deliberate indifference, he 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.'" Whitehead v. Burnside, 403 F. App'x 401, 403 (11th Cir. 2010) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187-88 (11th Cir. 1994)). None of the medical records submitted by Nealy or Defendants establish that Nealy's ear condition worsened because he did not see Dr. Marmol between June 2022 and March 2023. Nealy argues he missed out on the treatments Dr. Marmol ordered every three months, but the medical records show that Marmol did not order those treatments until November 2023.

In sum, Nealy fails to establish a genuine issue of material fact. There is no evidence that the medical treatment Dr. Le provided to Nealy was guided by anything other than her professional judgment. Nor does the record include any evidence suggesting Carner or Masters interfered with the medical care Nealy received. Nealy fails to show that any defendant was deliberately indifferent to his serious medical needs.

Accordingly, it is hereby

**ORDERED**:

Defendants Melinda Masters, Jon Carner, and Doctor Yen Le's Motion for Summary Judgment (Doc. #37) is **GRANTED**.  This action is **DISMISSED**.  The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment in favor of Defendants, and close this case.

**DONE and ORDERED** at Fort Myers, Florida, this __4th__ day of September 2024.

_/s/ John E. Steele_
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies:
All parties